## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

**MARK DELANE WARD,**

        **Plaintiff,**


**v.**                                                    **Case NO. 3:12-cv-06186**



**LAUREN PLYMALE, Cabell County
Assistant Prosecutor; MIKE CLARK,
Administrator, Western Regional Jail;
JUDGE ALFRED E. FERGUSON, Cabell
County Circuit Court; SHAWN
BARTRAM; JUDGE BETTY WOLFORD,
Cabell County Magistrate; JOHN
LAISHLEY, Public Defender; WV
JUDICIAL INVESTIGATION
COMMISSION; WV OFFICE OF
DISCIPLINARY COUNSEL; CABELL
COUNTY SHERIFF DEPARTMENT;
CABELL COUNTY PROSECUTOR'S
OFFICE; TED BACKUS, City of
Huntington Police Department; Clerk
of the Court, WV SUPREME COURT OF
APPEALS,**

        **Defendants.**


### PROPOSED FINDINGS AND RECOMMENDATIONS

        Pending before the Court is the initial screening of Plaintiff's *pro se* complaint
filed pursuant to 42 U.S.C. § 1983. (ECF No. 2). This matter is assigned to the
Honorable Robert C. Chambers, United States District Judge, and by Standing Order
has been referred to the undersigned United States Magistrate Judge for the submission

of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, the undersigned **FINDS** that Plaintiff has failed to state a claim for which relief may be granted and respectfully **RECOMMENDS** that the complaint be **DISMISSED**, **with prejudice**, and this matter be removed from the docket of the Court.

## I.    <u>Factual and Procedural History</u>

On November 30, 2011, Plaintiff Mark Delane Ward ("Ward") was arrested and brought before a Cabell County, West Virginia magistrate for an initial appearance on a criminal complaint charging him with second degree sexual assault. (ECF No. 2 at 7; ECF No. 2-1 at 4). At that time, a preliminary hearing was scheduled on December 9, 2011, and bond was set at $100,000 cash, which Ward was unable to post. (ECF No. 2 at 7). He was then detained at the Western Regional Jail in Barboursville, West Virginia pending further proceedings. On December 9, 2011, the day of the preliminary hearing, Ward was informed that he had been indicted by a Cabell County grand jury on charges of second degree sexual assault and intimidation of a witness. (*Id.*). In light of the indictment, the preliminary hearing was cancelled. Ward remained detained at the Western Regional Jail to await trial. (ECF No. 2-1 at 4).

Thereafter, Ward unsuccessfully objected to the cancellation of his preliminary hearing with his attorney, the presiding Circuit Court judge, and the West Virginia Supreme Court of Appeals, which denied his petition for a writ of mandamus on August 30, 2012. (ECF No. 2 at 11, 12, 17; ECF No. 2-1 at 3, 7-8). According to Ward, West Virginia law prohibited the State from indicting him once the date of the preliminary hearing had been set. (ECF No. 2 at 8). Ward contended that he did not waive his right

2

to a preliminary hearing; accordingly, cancellation of the hearing violated his right to equal protection and due process of law under the Fourteenth Amendment to the United States Constitution. (*Id.* at 10-11).

Since that time, Ward has become a prolific filer of actions in this Court,[1] and all of Ward's cases here have stemmed from his arrest and pending prosecution on the State's sexual assault and intimidation charges. Three of Ward's federal cases have been dismissed, and two remain pending, including the instant action. To complicate matters, in April 2013, Ward was found incompetent to stand trial on the state charges and was transferred from the Western Regional Jail to the William J. Sharpe, Jr., Hospital, an acute care psychiatric facility operated by the State of West Virginia. However, according to an order entered on August 15, 2013 by the Honorable Alfred E. Ferguson, Cabell County Circuit Judge, Ward is now competent to stand trial. Therefore, he has been returned to the Western Regional Jail, where he awaits further proceedings on the state criminal charges.

## II.    <u>Claims in the Instant Action</u>

Ward filed the instant action on October 3, 2012, alleging constitutional

---

[1] Ward has filed four additional federal actions, as follows:

*Ward v. Clark*, No. 3:12-cv-06386—On October 9, 2012, Ward filed a § 2254 petition for a writ of habeas corpus, alleging that he had been wrongfully denied a preliminary hearing and was therefore entitled to release from jail. This case was dismissed at Ward's request on November 8, 2012.

*Ward v. Clark*, No. 3:12-cv-07283 and *Ward v. Clark*, No. 3:12-cv-07928—On November 2 and November 19, 2012, respectively, Ward filed two separate § 2241 petitions for a writ of habeas corpus alleging many of the same underlying facts and related arguments in support of his requests for release from custody and dismissal of his state criminal charges. These cases were dismissed by the District Court on April 9, 2013.

*Ward v. Crawford,* No. 3:13-cv-22243—On August 26, 2013, Ward filed a second habeas corpus action under § 2254, which is currently pending. However, on September 5, 2013, Ward filed a motion to stay the action.

violations relating to the cancellation of his preliminary hearing on the State's criminal complaint. (ECF No. 2). Specifically, Ward asserts that (1) he was wrongfully deprived of a preliminary hearing; (2) his original criminal charges and bond were improperly "merged" with his subsequent indictment case; and (3) he has been held in custody in violation of his Fourth Amendment right against illegal search and seizure and his Fourteenth Amendment rights to equal protection and due process.

Ward also raises the following additional claims arising from his ongoing state criminal proceedings and pre-trial detainment: (1) he was maliciously accused of a crime he did not commit and wrongfully labeled a fugitive from justice, which both resulted in "extreme defamation to [his] character and public humiliation," and violated his "Fourteenth Amendment right to a fair trial;" (2) the state magistrate who issued his criminal complaint violated his Fourteenth Amendment right to a fair trial by "allowing [his] complaint to go public" in violation of Canon 3(B)(9) of the West Virginia Code of Judicial Conduct; (3) his initial bail amount of $100,000 was excessive and constituted a violation of his Eighth and Fourteenth Amendment rights; (4) his attorneys provided him with ineffective or otherwise objectionable assistance of counsel; (5) a forensic DNA swab test was conducted without his consent; and (6) he was subjected to a number of objectionable conditions of confinement as a pre-trial detainee, including mail tampering, wrist and leg restraints, lock-down confinement, and restrictions on phone and shower use.[2]  (*See* ECF No. 2).

---

[2] Ward additionally filed a motion for an injunction, a motion for review of the state court's mandamus ruling; and a motion for an order compelling the Western Regional Jail to conduct an MRI examination of Ward. These motions have been previously addressed and resolved.  (ECF No.20).

4

As for relief, Ward requests that the Court (1) investigate his allegations "to aid [his] Unlawful Arrest claim against the State of West Virginia" currently pending in the West Virginia Court of Claims; (2) "order expungement of DNA testing" conducted over his objection; and (3) order his release from pre-trial detention. (*Id.* at 5). In addition, he seeks money damages for his alleged injuries, which he lists without elaboration, consisting of: (i) "humiliation and emotional and mental anguish," (ii) "negligence," (iii) "dehumanization and isolation," (iv) "negligent supervision," (v) "defamation of character," (vi) "wrongful search and seizure," (vii) "violation of equal protection," (viii) "cruel and unusual punishment," (ix) "medical and mental health," (x) "intentional infliction of emotional distress," (xi) "false arrest," and (xii) "duress." (*Id.* at 28-31).

## III.   Discussion

In order to maintain a *prima facie* case under 42 U.S.C. § 1983, Ward must show through factual allegations that he was (1) deprived of a right secured by the Constitution or laws of the United States, and that (2) the deprivation was committed by a person acting under color of state law. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999); *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003). Pursuant to 28 U.S.C. § 1915A, the Court must screen each case in which "a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). The Court must dismiss the case, or any part of it, if the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). A case is "frivolous" if it lacks "an arguable basis either in law or fact." *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338

(1989). A case lacks an arguable basis in law when it relies upon an indisputably meritless legal theory, *Denton v. Hernandez,* 504 U.S. 25, 32, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992), and lacks an arguable basis in fact when the supporting allegations describe "fantastic or delusional scenarios." *Neitzke,* 490 U.S. at 328. Similarly, a complaint fails to state a compensable claim when, viewing the factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint fails to contain enough facts to state a claim that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

In the event of a *pro se* complaint, the court must liberally construe the allegations contained therein. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). Even under this less stringent standard, the complaint must nevertheless contain sufficient factual allegations to support a cause of action that is cognizable in federal court. *Weller v. Department of Social Services,* 901 F.2d 387, 391 (4th Cir. 1990). The court may not rewrite the complaint to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), develop the plaintiff's legal theories for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the Court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

After closely reviewing each of Ward's claims and assessing their individual sufficiency, as well as their viability against the named defendants, the undersigned has concluded that Ward fails to state a *prima facie* case under 42 U.S.C. § 1983 on any of his claims or against any of the named defendants. Therefore, the complaint should be dismissed in its entirety.

## A.     Preliminary Hearing and "Merger" Order

First, Ward claims that he was wrongfully deprived of a preliminary hearing and that his original criminal charges and bond were improperly "merged" with his subsequent indictment case. (ECF No. 2 at 10-11). As a result, Ward believes that his continued detainment at the Western Regional Jail violates his Fourth Amendment right against illegal search and seizure and his Fourteenth Amendment rights to equal protection and due process of law. (*Id.*). He requests that the Court "investigate these accusations/complaint" for use in a separate civil action he filed in state court, and "order [his] release due to unlawful arrest and imprisonment to improperly held preliminary hearing." (*Id.* at 5). Ward also seeks monetary compensation for "wrongful search and seizure," "violation of equal protection," and "false arrest," among other injuries. (*Id.* at 29-31).

This Court has already rejected identical claims made by Ward in two prior proceedings. *See Ward v. Clark*, No. 3:12-cv-07283, 2013 WL 1437615, at *3-5 (S.D.W.V. Apr. 9, 2013); *Ward v. Clark*, No. 3:12-cv-07928, 2013 WL 4478021, at *4-6 (S.D.W.V. Apr. 9, 2013). Having been properly indicted by a grand jury subsequent to his arrest, Ward was not entitled to a preliminary hearing under federal or state law. *See Gerstein v. Pugh*, 420 U.S. 103, 123, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *Peyatt v. Kopp*, 189 W. Va. 114, 116, 428 S.E.2d 535 (W. Va. 1993); *State ex rel. Rowe v. Ferguson*, 165 W. Va. 183, 185-88, 268 S.E.2d 45 (W. Va. 1980); *State v. Hutcheson*, 177 W. Va. 391, 397, 352 S.E.2d 143 (W. Va. 1986). Nor was his initial case before the state magistrate improperly "merged" following his indictment in the state circuit court. *See State v. Satterfield*, 182 W.Va. 365, 367 n.3, 387 S.E.2d 832 (W. Va. 1989) (quoting W. Va. Code

7

§ 50-2-3); *Golden v. Bd. of Educ. of Harrison County*, 169 W. Va. 63, 66, 285 S.E.2d 665

(W. Va. 1981). As the undersigned has previously observed,

> the circuit court merely adopted the magistrate's earlier rulings and proceeded with the case when the magistrate court's jurisdiction terminated. Ward overlooks the fact that "jurisdiction in magistrate court is limited to 'misdemeanor offenses committed in the county and to conduct preliminary examinations on warrants charging felonies committed within the county.' "*State v. Satterfield,* 182 W. Va. 365, 367 n. 3 (W.Va.1989) (quoting W. Va.Code § 50–2–3); *see also* W. Va. Const. art. 8, § 10 ("Magistrate courts shall have such original jurisdiction in criminal matters as may be prescribed by law, but no person shall be convicted or sentenced for a felony in such courts."). Thus, the magistrate's "lawful authority is to conduct a preliminary hearing and, upon a finding of probable cause, to bind the case over to the circuit court grand jury." *Golden v. Board of Educ. Of Harrison County,* 169 W. Va. 63, 66 (W.Va.1981). However ... Rule 5(c) expressly permits the State to seek indictment in circuit court prior to the date of the preliminary hearing, and this is common practice in the West Virginia criminal court system. *See State ex rel. Repass v. Hoke,* No. 11–0663, 2012 WL 2979077, at *19 (W.Va. Mar. 9, 2012) (holding that defendant was not constitutionally mandated to receive a preliminary hearing where the magistrate dismissed the charges on the ground that the State would seek indictment). Following indictment, the circuit court exercises jurisdiction over a criminal defendant facing felony charges. *See State v. Scott,* 214 W. Va. 1, 4 n. 6 (W.Va.2003); *see also* W. Va.Code § 51–2–2 (circuit court has original and general jurisdiction over crimes and misdemeanors). Although Ward originally appeared on a warrant issued by the magistrate, he was indicted on felony charges of sexual assault and intimidation of a witness prior to his preliminary hearing; thereby, ending the necessary involvement of the magistrate.

*Ward v. Clark*, No. 3:12-cv-07283, 2012 WL 7855777, at *5 (S.D.W.V. Dec. 18, 2012);

*Ward v. Clark*, No. 3:12-cv-07928, at *5 (S.D.W.V. Dec. 18, 2012). Ward's claims of

constitutional violations are plainly nonmeritorious as they are based upon a

fundamental misunderstanding of the applicable law.

Therefore, the undersigned **FINDS** that Ward has failed to state a cognizable

claim as to his allegations regarding the denial of a preliminary hearing, improper

merger order, and unlawful continued confinement and respectfully **RECOMMENDS**

that the United States District Judge **DISMISS** them.

### B.    *Younger* Abstention

Ward also alleges several constitutional deficiencies in his ongoing state court criminal proceeding. First, Ward argues that he has been denied his "Fourteenth Amendment right to a fair trial" due to pretrial publicity regarding his case. (ECF No. 2 at 5-6). Second, he asserts that his initial bail amount was excessive, amounts to cruel and unusual punishment, and violated his Eighth and Fourteenth Amendment Rights. (*Id.* at 13). Third, Ward complains about the lack of assistance he has received from his criminal counsel. (*Id.* at 14-15, 22). Finally, Ward objects to a forensic DNA swab test that he claims was conducted in violation of proper procedure and without his consent. (*Id.* at 16, 21). He requests that the Court "order expungement of DNA testing" and award monetary damages for "cruel and unusual punishment." (*Id.* at 5, 30).

This Court is bound by our "national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances." *Younger v. Harris*, 401 U.S. 37, 41, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The United States Court of Appeal for the Fourth Circuit ("Fourth Circuit") has explained:

> *Younger* held that federal courts may not enjoin a pending state criminal prosecution, absent a clear showing that defense of the prosecution will not assure adequate vindication of constitutional rights. What lies behind *Younger,* of course, is a broader rule of comity: namely, that federal courts should abstain from the decision of constitutional challenges to state action, however meritorious the complaint may be, whenever the federal claims have been or could be presented in ongoing state judicial proceedings that concern important state interests.

*Cinema Blue of Charlotte, Inc. v. Gilchrist,* 887 F.2d 49, 52 (4th Cir. 1989) (internal marks omitted). According to the Fourth Circuit, abstention under *Younger* is appropriate when: "(1) there are ongoing state judicial proceedings; (2) the proceedings

implicate important state interests; and (3) there is an adequate opportunity to raise federal claims in the state proceedings." *Martin Marietta Corp. v. Maryland Comm'n on Human Relations,* 38 F.3d 1392, 1396 (4th Cir. 1994) (citing *Middlesex County Ethics Comm'n v. Garden State Bar Ass'n,* 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982)). Under *Younger*, this Court may not equitably interfere with state criminal proceedings "except in the most narrow and extraordinary of circumstances." *Gilliam v. Foster*, 75 F.3d 881, 903 (4th Cir. 1996). That is, "a federal court may disregard *Younger*'s mandate only where (1) there is a showing of bad faith or harassment by state officials responsible for the prosecution; (2) the state law to be applied in the criminal proceeding is flagrantly and patently violative of express constitutional prohibitions; or (3) other extraordinary circumstances exist that present a threat of immediate and irreparable injury." *Nivens v. Gilchrist ("Nivens II"),* 444 F.3d 237, 241 (4th Cir. 2006) (quoting *Kugler v. Helfant*, 421 U.S. 117, 124, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975)) (internal quotation marks omitted).

In this case, the first two prongs of the *Martin Marietta* test are easily met. Regarding the first prong, the criminal proceeding that Ward challenges herein is currently pending trial. Accordingly, there are ongoing state proceedings. The second prong of the test is met inasmuch as the State of West Virginia has an important interest in maintaining the efficient operation of its criminal justice system without undue federal interference. *See Nivens v. Gilchrist ("Nivens I")*, 319 F.3d 151, 154 (4th Cir. 2003). As for the third prong, "ordinarily a pending state prosecution provides the accused a fair and sufficient opportunity for vindication of federal constitutional rights." *Gilliam*, 75 F.3d at 904 (quoting *Kugler,* 421 U.S. at 124). This appears to be so

regarding Ward's claims, as he offers no explanation as to why his concerns cannot be thoroughly addressed in the state criminal adjudication process. In fact, now that his trial is imminent, Ward simply needs to bring the issues to the attention of the state court.

The United States Supreme Court has held that "a trial judge has an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity. And because of the Constitution's pervasive concern for these due process rights, a trial judge may surely take protective measures even when they are not strictly and inescapably necessary." *Gannett Co., Inc. v. DePasquale*, 443 U.S. 368, 378, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979) (internal citation omitted). Even assuming, as Ward alleges, that his right to a fair trial has been jeopardized by being featured in the news and by the county magistrate "allowing [his] complaint to go public," (ECF No. 2 at 5-6), Ward provides no factual basis on which to conclude that the state trial court is incapable of protecting his right to a fair trial. Similarly, Ward provides no basis to infer that the state courts are precluded from reconsidering the amount of his bail. To the contrary, under West Virginia law, Ward has a statutory right to appellate review of the bail amount "at any stage of the proceedings." W. Va. Code § 62-1C-1(c) ("The amount of bail or the discretionary denial of bail at any stage of the proceedings may be reviewed by summary petition first to the lower appellate court, if any, and thereafter by summary petition to the supreme court of appeals or any judge thereof."). Therefore, Ward's excessive bail claim can and should be addressed by the state courts, and should remain subject to federal abstention unless and until circumstances justify this Court's intervention. *See Lazarus v. Baca*, 389 Fed. Appx. 700, 700-01 (9th Cir. 2010) (applying *Younger*

abstention where petitioner has opportunity to raise her excessive bail claim before the state court). As to his concerns regarding the DNA swab and testing, Ward is free to challenge the constitutionality of the DNA test results and request that the state trial court apply the exclusionary rule or otherwise determine the inadmissibility of the test results at trial. *See* W. Va. R. Crim. P. 12(b), 41(f) (suppression hearings). Finally, if Ward believes his counsel is ineffective in presenting his defense, Ward may request substitution of counsel from the state court before his case proceeds to trial. Should Ward be convicted of the alleged offenses, he will have adequate opportunity to raise the issue of ineffective assistance of counsel, along with other assignments of error, on either appellate or collateral review. *See* W.V. Code § 53-4A-1 (habeas corpus for post-conviction review); § 58-5-1 (direct appeal).

Ward does not indicate that he has raised any of these constitutional claims with the state criminal court, nor does it matter for this Court's purpose, as "the key question is whether the state allows for [defendants] to raise their objections, not whether the state agrees with those objections." *Nivens II*, 444 F.3d at 243 (citing *Moore v. Sims*, 442 U.S. 415, 425-26, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1974)). Ward has sufficient opportunity to pursue his constitutional claims in state court and has plainly failed to demonstrate exceptional circumstances that would justify this Court's intrusion into his ongoing state criminal prosecution.

Accordingly, the undersigned **FINDS** that Ward's claims of alleged pretrial deficiencies are subject to abstention under *Younger* and respectfully **RECOMMENDS** that the United States District Judge **DISMISS** all claims relating to excessive bail, Ward's right to a fair trial, the propriety of his mandatory DNA swab test, and the

alleged ineffectiveness of his current counsel.

### C.    Profiling on "Fugitive Files"

Ward alleges that he was "intentionally placed on the Fugitive Files to maliciously accuse [him] of a crime he did not commit." (ECF No. 2 at 5). The "Fugitive Files" is a collaborative news segment between local news station WCHS–ABC Channel 8 and the Kanawha County Sheriff's Department, in which the station profiles fugitives at the request of the police, and then "open[s] up the tipline for [public viewers] to respond." WCHS-ABC News, at http://www.wchstv.com/newsroom/fugitivefiles/ (last visited September 9, 2013). Ward was apparently profiled on the Fugitive Files on November 15, 2011. *See* Fugitive Files for November 15, 2011, WCHS-ABC News, available at http://www.wchstv.com/newsroom/fugitivefiles/ff111115.shtml (last visited September 9, 2013). Ward claims that this exposure caused "extreme defamation to [his] character and public humiliation." (ECF No. 2 at 5). He requests money damages for "humiliation and emotional and mental anguish" and "defamation of character," (*Id.* at 28-29), although which of the named defendants is allegedly implicated in the Fugitive Files publication is not entirely clear.

"Defamation, by itself, is a tort actionable under the laws of most States, but not a constitutional deprivation." *Siegert v. Gilley*, 500 U.S. 226, 233, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *see also Paul v. Davis*, 424 U.S. 693, 710-14, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). In *Paul v. Davis,* several local police chiefs distributed a flyer of "active shoplifters," which included a photograph of the plaintiff, who had previously been arrested for shoplifting. 424 U.S. at 695-96. Subsequent to the flyer distribution, the plaintiff's shoplifting charge was dismissed, and he in turn filed a § 1983 suit

alleging that the flyer "impermissibly deprived him of some 'liberty' protected by the Fourteenth Amendment." *Id.* at 697. The Supreme Court observed that the plaintiff's "complaint would appear to state a classical claim for defamation actionable in the courts of virtually every State," and that "[his] construction would seem almost necessarily to result in every legally cognizable injury which may have been inflicted by a state official acting under 'color of law' establishing a violation of the Fourteenth Amendment." *Id.* at 697-99. Ultimately, the Supreme Court rejected "the proposition that reputation alone, apart from some more tangible interests such as employment, is either 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause." *Id.* at 701. Thus, the Court held that the State officers' "defamatory publications, however seriously they may have harmed [the plaintiff's] reputation, did not deprive him of any 'liberty' or 'property' interests protected by the Due Process Clause." *Id.* at 712. Ward's tort-based claims of "defamation and public humiliation" are therefore not cognizable under § 1983.[3]

To the extent that Ward attempts to raise a malicious prosecution claim, such a claim is subject to abstention. *See Brooks v. City of Winston-Salem,* 85 F.3d 178, 183 (4th Cir. 1996) (claims for malicious prosecution "do not accrue until a favorable termination [of the criminal proceeding] is obtained."). Ward's underlying criminal proceeding is still pending in state court. Therefore, he must wait to raise a malicious prosecution claim until after the criminal proceeding has been resolved in his favor.

---

[3] Ward also claims that his "Fourteenth Amendment right to a fair trial" was violated. (ECF NO. 2 at 5). However, as discussed above, Ward's claim that being featured on the Fugitive Files worked to deprive him of his constitutional right to a fair trial, is subject to *Younger* abstention. *See supra*, Part III.B.

Thus, the undersigned **FINDS** these claims to be fundamentally insufficient to state a § 1983 case and respectfully **RECOMMENDS** that the United States District Judge **DISMISS** Ward's claims of defamation and public humiliation.

### D.     Conditions of Confinement

Ward complains that he has been placed on protective custody where he is limited to one hour per day to take a shower and use the telephone. He also claims that two correctional officers, Guy and Stowers, accused him of flooding an area when he accidently spilled water, causing him to be placed in "lock down" for an extended period of time. There, he was forced to occasionally wear wrist and ankle restraints. Finally, Ward alleges that someone at the Western Regional Jail regularly tampers with his mail. (*See* ECF No. 2 at 24).

Ward is a pretrial detainee; therefore, his claims relating to the conditions of his confinement are analyzed under the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment's prohibition against cruel and unusual punishment, which applies to convicted inmates. *Bell v. Wolfish*, 441 U.S. 520, 537 n. 16, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). As the Fourth Circuit explained:

> While a convicted prisoner is entitled to protection only against "cruel and unusual" punishment, a pretrial detainee, not yet found guilty of any crime, may not be subjected to punishment of any description. However, not every hardship encountered during pretrial detention amounts to "punishment" in the constitutional sense. In order to establish that a particular condition or restriction of detention constitutes constitutionally impermissible "punishment" a detainee must show either 1) an "expressed intent" to punish or 2) a lack of a reasonable relationship "to a legitimate nonpunitive governmental objective, from which a punitive intent may be inferred."

*Hill v. Nicodemus,* 979 F.2d 987, 991 (4th Cir. 1992) *(citing Martin v. Gentile,* 849 F.2d 863, 870 (4th Cir. 1988)) (internal citations omitted). Nonetheless, "the

analysis of [conditions-of-confinement] claims under the Fourteenth Amendment shares much in common with the Eighth Amendment approach." *Jeffers v. McKinley,* Case 2:07-00180, 2009 WL 961938 (S.D.W.Va. Apr. 6, 2009). "Only governmental conduct that 'shocks the conscience' is actionable as a violation of the Fourteenth Amendment." *Young v. City of Mount Rainier,* 238 F.3d 567, 574 (4th Cir. 2001) (*quoting County of Sacramento v. Lewis,* 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)). Similarly, only conditions that result in a denial of the "minimal civilized measure of life's necessities" amount to constitutional violations under the Eighth Amendment. *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). To state a plausible claim under either provision, a prisoner must show (1) an objective component; that is "a deprivation suffered or injury inflicted" that was "sufficiently serious," when measured by an objective standard, and (2) a subjective component; that being, that the responsible prison officials had a "sufficiently culpable state of mind."   *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

Even when accepting all of Ward's allegations as true, the facts contained in the complaint are simply insufficient to satisfy both components of a conditions-of-confinement claim. First, Ward admits in the complaint that he was moved to protective custody because he was "in fear for [his] life." (ECF No. 2 at 24). Thus, Ward establishes through his own statements that his segregation from the general prison population was not imposed as punishment, but instead, was intended to protect him from the other inmates. Ward objects to the increased restrictions that accompanied protective custody, but makes no allegation that the conditions were unrelated to a legitimate

nonpunitive governmental objective or were unreasonable for their intended purpose. Accordingly, no factual basis exists upon which to conclude that Ward's placement in protective custody, and its inevitable constraints, rise to the level of constitutional violations. *See Allgood v. Morris,* 724 F.2d 1098, 1101 (4th Cir. 1984).

Second, Ward alleges that he was placed in lock down after "false allegations," including being accused of creating a flood, when in truth he had accidentally spilled some water. Apparently while there, Ward was periodically forced to wear wrist and leg restraints. (ECF No. 2 at 24). These bare and conclusory allegations clearly do not contain enough facts to state a claim that is plausible on its face. *Twombly,* 550 U.S. at 570. This is particularly true when bearing in mind that deference should be given to prison officials for actions they take in managing the correctional facility. *Bell,* 441 U.S. at 540 n.23 (Maintaining order and security and operating the facility in a manageable fashion are considerations "peculiarly within the province and professional expertise of corrections officers, and, in the absence of substantial evidence in the record to indicate that the officials exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters."). Ward does not set forth any facts that indicate an improper motive on the part of the correctional officials, nor does he allege any serious or significant physical or emotional injury resulting from the restraints or lock down. *Shakka v. Smith,* 71 F.3d 162, 166 (4th Cir.1995) ("In the context of a conditions-of-confinement claim, to demonstrate that a deprivation is extreme enough to satisfy the objective component of an Eighth Amendment claim, a prisoner must 'produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions', or demonstrate a substantial risk of such

serious harm resulting from the prisoner's unwilling exposure to the challenged conditions"). In the absence of factual allegations demonstrating that the conditions in lock down deprived Ward of the minimal civilized measure of life's necessities, had no legitimate nonpunitive purpose, and were imposed expressly and solely to punish him, Ward fails to state a plausible claim for relief. *Kibwika v. Broward Cnty. Sheriff's Office,* 453 Fed. App'x 915, 919 (11th Cir.2012) (Plaintiff "failed to state a plausible claim for relief because he provided no factual allegations which, if accepted as true, show that jail officials imposed the lockdown for the purpose of punishment."); *see also*, *Sanders v. Hopkins,* 131 F.3d 152 (10th Cir. 1997) (table) (The decision to use restraints is one within the discretion of prison officials.).

Finally, Ward alleges that someone at the Jail "tampers" with his mail on a daily basis, although he provides no further details. While prisoners have a constitutional right to send and receive mail, correctional facilities concurrently have legitimate, constitutionally valid reasons for inspecting the mail sent and received by inmates. *Thornburgh v. Abbott,* 490 U.S. 401, 407, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989). Whether the actions of a correctional facility violate constitutional protections depends on factors such as the nature of the alleged violation; the penological purpose purportedly advanced by the challenged act; whether the mail was incoming or outgoing; whether it was legal mail; and whether the alleged wrongful act was isolated or was part of an impermissible pattern and practice. Moreover, the complaining prisoner must show an actual injury associated with the tampering of his mail. *See Rivera v. Byers,* Case 8:12-cv-12469-JMC, 2013 WL 3894843 (D.S.C. July 25, 2013). Given the absence of supporting facts in his complaint, Ward's claim of mail tampering

fails to state a constitutional violation.

Therefore, the undersigned **FINDS** that Ward's complaint fails to state a viable action arising from the conditions of his confinement and respectfully **RECOMMENDS** that the United States District Judge **DISMISS** these claims.[4]

### E.    List of Compensable Injuries

At the end of his complaint, Ward includes a four-page list of compensable "injuries," which are entirely devoid of any accompanying factual allegations. (ECF No. 2 at 28-31). Some of the alleged injuries correspond with claims of Ward's that this Court has already rejected: defamation of character, wrongful search and seizure, violation of equal protection, and false arrest. (*Id.*). Other alleged injuries appear to relate to Ward's conditions-of-confinement claims: dehumanization and isolation, cruel and unusual punishment, medical and mental health. (*Id.*). The remainder of Ward's purported injuries do not readily correspond with any factual allegations contained in his complaint: negligence, negligent supervision, intentional infliction of emotional distress, duress. (*Id.*).

"Although a pro se litigant's pleadings are to be construed liberally, her complaint must contain factual allegations sufficient to raise a right to relief above the speculative level and that state a claim to relief that is plausible on its face." *Whitner v. United States*, Fed. Appx. 801, 802 (4th Cir. 2012) (internal quotations omitted). In Ward's

---

[4] In addition, it does not appear that Ward has exhausted his administrative remedies on any of his conditions-of-confinement claims. The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Although the failure to exhaust administrative remedies is an affirmative defense and exhaustion is not a jurisdictional requirement, the court may *sua sponte* take steps to dismiss the complaint prior to service when the lack of exhaustion is apparent on the face of the prisoner's complaint. *Moore v. Bennette,* 517 F.3d 717, 725 (4th Cir.2008).

case, any attempt by the Court to assign these remaining "injuries" to the facts that he alleges elsewhere in his complaint would be entirely speculative. Furthermore, Ward's list of remaining "injuries" appear to be common law tort claims, which do not amount to constitutional violations merely by virtue of having been committed by a state actor. *See Waybright v. Frederick County*, 528 F.3d 199, 204 (4th Cir. 2008); *see also Baker v. McCollan*, 443 U.S. 137, 146, 99 S. Ct. 2689, 61 L.Ed.2d 433 (1979) ("Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law."). Although the Court may exercise supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy," 28 U.S.C. § 1367(a), none of the alleged "injuries" that Ward lists are accompanied by any supporting factual allegations. Thus, Ward has not established any cognizable claim under state law, let alone demonstrated that such claims form part of the same case or controversy as his federal claims.

Thus, to the extent that Ward's list of compensable "injuries" are intended as separate additional claims, the undersigned **FINDS** that they must fail and respectfully **RECOMMENDS** that the United States District Judge **DISMISS** Ward's claims of "injury" for failure to state claims upon which relief may be granted.

### F.    Claims as Applied to Named Defendants
#### 1. Cabell County Prosecutor's Office
####    Lauren Plymale, Assistant Prosecuting Attorney

Ward names both Assistant Prosecuting Attorney Lauren Plymale, as well as the Cabell County Prosecutor's Office as defendants in the instant action. He alleges that Defendant Plymale is responsible for requesting the "merger order with the Magistrate

Court that resulted in [his] illegal detainment." (ECF No. 2 at 23). According to Ward, this merger order constituted "prohibited procedure" and Plymale has therefore violated Rule 8.4(d) of the West Virginia Rules of Professional Conduct.[5] (*Id.* at 9). Ward seeks release from pretrial detention, as well as damages from both Plymale and the Cabell County Prosecutor's Office. (*Id.* at 5, 28-31). As explained below, Ward clearly fails to state a cognizable claim upon which relief may be granted with respect to Defendant Plymale and the Cabell County Prosecutor's Office.

The West Virginia Rules of Professional conduct are promulgated and enforced by the West Virginia Supreme Court of Appeals pursuant to its "exclusive authority to regulate and control the practice of law" and its "inherent power to supplement rules and procedures and to approve the State Bar's bylaws." *Allstate Ins. Co. v. West Virginia State Bar*, 233 F.3d 813, 818 (4th Cir. 2000). The Rules of Professional Conduct "are not designed to be a basis for civil liability," but rather, they "are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies." Preamble, W. Va. Rules of Professional Conduct. Although attorneys "must comply with the state's rules of professional conduct, any purported failure to do so does not give rise by itself to liability under § 1983 for which an individual may recover civil damages, as the rules of professional conduct do not confer either federal constitutional or statutory rights." *Berry v. Village of Millbrook*, 815 F.Supp.2d 711, 722 n.7 (S.D.N.Y. Sept. 26, 2011); *see also United States v. Beliveau*, Crim. No. 09–304 (JMR/JJK), 2010 WL 681257, at *5 (D. Minn. Feb. 23, 2010); *Webster v. Costello*, No. C08-5266BHS, 2008 WL 2856912, at *3 (W.D. Wash. Jul. 17,

---

[5] Rule 8.4(d), West Virginia Rules of Professional Conduct, states "It is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice."

2008); *Crane v. Cumberland County, PA*, No. Civ.A. 1:CV-99-1798, 2000 WL 34567277, at *7 n.4 (M.D. Pa. Jun. 16, 2000). Therefore, Ward's assertion that Defendant Plymale violated Rule 8.4(d) of the West Virginia Rules of Professional Conduct, in and of itself, does not establish a claim cognizable under § 1983.

In addition, Ward has not alleged any facts with respect to his claim against Defendant Plymale, which if accepted as true would "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570). There is nothing to suggest that Plymale's conduct, in pursuing indictment and the subsequent "merger order," was in any way improper. *See supra* Part II.A. Moreover, Ward has not alleged any facts whatsoever supporting his conclusory claims of dehumanization and isolation, negligent supervision, or intentional infliction of emotional distress. (ECF No. 2 at 28-31). Likewise, he offers no factual bridge to connect Defendant Plymale to these particular claims.

Even if Ward had managed to allege sufficient facts to make out a claim under § 1983, he would not be entitled to damages because Plymale has absolute prosecutorial immunity with respect to Ward's claims. In *Imbler v. Pachtman*, the Supreme Court held that a prosecutor enjoys absolute immunity from suit for conduct "in initiating a prosecution and in pursuing the State's case." 424 U.S. 409, 431, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). The Court explained:

> A prosecutor is duty bound to exercise his best judgment both in deciding which suits to bring and in conducting them in court. The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages. Such suits could be expected with some frequency, for a

defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate.

*Id.* at 424-25. Although the Court in *Imbler* declined to delineate the specific prosecutorial functions that give rise to the protection of absolute immunity, the Fourth Circuit Court of Appeals has repeatedly reaffirmed that a prosecutor is entitled to absolute immunity for claims that rest on her decisions regarding "whether and when to prosecute." *Lyles v. Sparks,* 79 F.3d 372, 377 (4th Cir. 1996) (quoting *Imbler,* 424 U.S. at 431 n.33); *see also Ehrlich v. Giuliani,* 910 F.2d 1220, 1222-23 (4th Cir. 1990). In other words, absolute immunity is afforded to prosecutors when acting "within the advocate's role." *Buckley v. Fitzsimmons,* 509 U.S. 259, 278, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993); *see also Nivens II*, 444 F.3d at 250 (explaining that "prosecutors should be afforded absolute immunity when their activities were intimately associated with the judicial phase of the criminal process") (internal quotations omitted). Ward assigns error to Plymale's conduct in the course of indicting him subsequent to his arrest on a criminal complaint, and for her role in obtaining a "merger order" that bound his magistrate case over to the state circuit court following his indictment. (ECF No. 2 at 9). Consequently, the actions about which Ward complains plainly fall within the scope of Plymale's prosecutorial duties.

Although Ward names the Cabell County Prosecutor's Office as a defendant, he makes no allegations regarding the Prosecutor's Office independent from the alleged conduct of defendant Plymale. If Ward seeks to hold the Cabell County Prosecutor's Office liable as defendant Plymale's employer, he has failed to state a cognizable claim, as it is well settled that "municipalities are not liable pursuant to respondeat superior principles for all constitutional violations of their employees simply because of the

employment relationship." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999) (citing *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 692-94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)); *Connick v. Thompson*, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011) ("[U]nder § 1983, local governments are responsible only for their *own* illegal acts. They are not vicariously liable under § 1983 for their employees' actions.") (internal citations omitted). A municipality may be liable under § 1983 where a policymaker officially promulgates or sanctions an unconstitutional law, or where the municipality is deliberately indifferent to the development of an unconstitutional custom. *See Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 441, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) ("A plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision."); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 108 S,Ct, 915, 99 L.Ed.2d 107 (1988) ("[M]unicipalities may be held liable under § 1983 only for acts for which the municipality itself is actually responsible, that is, acts which the municipality has officially sanctioned or ordered.") (internal quotations omitted); *Edwards*, 178 F.3d at 244 (municipal liability results when the execution of an unconstitutional governmental policy or custom inflicts injury); *Jordon by Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994) ("Section 1983 plaintiffs seeking to impose liability on a municipality must, therefore, adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights."). In Ward's case, he fails to allege any policy, custom, or other action of the County Prosecutor's Office that resulted in a violation of federal law.

24

Therefore, the undersigned **FINDS** that these defendants are immune from liability and respectfully **RECOMMENDS** that the United States District Judge **DISMISS** the complaint as to the Cabell County Prosecuting Attorney's Office and Assistant Prosecuting Attorney Lauren Plymale.

### 2. Alfred E. Ferguson, Cabell County Circuit Judge
### Betty J. Wolford, Cabell County Magistrate
### Daniel Goheen, Cabell County Magistrate

Ward names Magistrate Betty J. Wolford and Magistrate Daniel Goheen of the Cabell County Magistrate Court, and Judge Alfred E. Ferguson of the Cabell County Circuit Court as defendants in the instant action. Ward alleges that Judge Ferguson wrongfully (1) denied Ward a preliminary hearing and issued an improper "merger order" following his indictment in circuit court. (ECF No. 2 at 7, 9, 11); (2) set an excessive bond amount. (*Id.* at 12, 13); and (3) ordered Ward to provide a DNA sample against his will. (*Id.* at 16, 18). Ward asserts that Magistrate Wolford violated Canons 3(a)(1) and 3(b)(2) of the West Virginia Code of Judicial Conduct, by committing Ward back to the Western Regional Jail instead of releasing him, following the merger order that bound his case over to the circuit court. (*Id.* at 7, 9-10).[6]  Although he does not specifically list him as a defendant in the complaint, Ward also alleges that Magistrate Daniel M. Goheen of the Cabell County Magistrate Court violated his Fourteenth Amendment rights "by allowing this complaint to go public" in violation of the Canon

---

[6] The West Virginia Code of Judicial Conduct does not contain a "Canon 3(A)(1)," however Canon 3(A) requires that "[t]he judicial duties of a judge take precedence over all the judge's other activities. The judge's judicial duties include all the duties of the judge's office described by law." Canon 3(A). Canons 3(B), 3(C), and 3(D) go on to describe the judges' adjudicative, administrative, and disciplinary responsibilities, respectively. Canon 3(B)(2) requires that "[a] judge shall be faithful to the law and maintain professional competence in it. A judge shall not be swayed by partisan interests, public clamor, or fear of criticism." Canon 3(B)(2), West Virginia Code of Judicial Conduct.

3(B)(9) of the West Virginia Code of Judicial Conduct.[7] (*Id.* at 4, 6). Ward asks the Court to "order expungement of DNA testing and order [his] release due to unlawful arrest and imprisonment to improperly held preliminary hearing." (*Id.* at 5). He also seeks money damages from Judge Ferguson, Magistrate Wolford, and Magistrate Goheen for his resulting injuries. (ECF No. 2 at 28-31).

First, as discussed above, Ward's claims regarding his preliminary hearing, merger order, and continued pretrial detainment are meritless, as they are premised upon a misunderstanding of the applicable law. *See supra* Part II.A. Similarly, Ward's claims of excessive bond, improper DNA testing, and prejudicial pretrial publicity, are subject to *Younger* abstention due to his ongoing criminal proceedings in state court. *See supra* Part II.B. Accordingly, Ward is not entitled to any of the injunctive measures he requests with respect to his claims.

Second, although § 1983 actions for damages are ordinarily stayed pending the outcome of the criminal proceedings warranting *Younger* abstention, *see Traverso v. Penn*, 874 F.2d 209, 213 (4th Cir. 1989); Suggs *v. Brannon*, 804 F.2d 274, 280 (4th Cir. 1986), defendants Judge Ferguson, Magistrate Wolford, and Magistrate Goheen are protected from liability for damages by absolute judicial immunity. It is well established that "[j]udges enjoy absolute judicial immunity from damages liability for judicial acts unless done 'in clear absence of all jurisdiction.'" *Everson v. Doughton*, 267 Fed. Appx. 229, 229 (4th Cir. 2008) (quoting *Stump v. Sparkman*, 435 U.S. 349, 356-57, 98 S.Ct.

---

[7] "Except for statements made in the course of official duties or to explain court procedures, a judge shall not make any public or nonpublic comment about any pending or impending proceeding which might reasonably be expected to affect its outcome or impair its fairness. The judge shall require similar abstention on the part of court personnel subject to the judge's direction and control." Canon 3(B)(9), West Virginia Code of Judicial Conduct.

1099, 55 L.Ed.2d 331 (198)). Such absolute immunity precludes damages for actions taken in error, done maliciously, or in excess of the judge's authority. *Id.*; *see also Chu v. Griffith*, 771 F.2d 79, 81 (4th Cir. 1985). Moreover, "[m]agistrate judges are judicial officers, and are thus entitled to absolute immunity under the same conditions as are judges." *See King v. Myers*, 973 F.2d 354, 356 (4th Cir. 1992); *Sofer v. State of N.C. Hertford Police Dept.*, No. 91-7024, 1991 WL 107545, at *2 (4th Cir. 1991) ("State magistrates are entitled to absolute immunity for acts performed in their judicial capacity"); *Pressly v. Gregory*, 831 F.2d 514, 517 (4th Cir. 1987). Here, Ward asserts that Judge Ferguson, Magistrate Wolford, and Magistrate Daniel Goheen each erred in their respective resolution of issues arising in the course of his state criminal proceedings. As state judges properly presiding over Ward's initial appearance, indictment and transfer to the circuit court, bond hearings, and pretrial discovery hearings, all three defendants are entitled to absolute immunity from Ward's claims. He is therefore not entitled to the damages he seeks.

Thus, the undersigned **FINDS** that Judge Ferguson, Magistrate Wolford, and Magistrate Goheen are absolutely immune from liability and respectfully **RECOMMENDS** that the complaint be **DISMISSED** as to these defendants.

### 3. Shawn Bartram, Appointed Counsel
### John Laishley, Appointed Counsel

Ward names Shawn Bartram and John Laishley, appointed counsel in his state criminal proceeding, as defendants in the instant action.[8] (ECF No. 2 at 4). Ward appears to raise a number of ineffective assistance of counsel claims relating to his

---

[8] Shawn Bartram was initially appointed to represent Ward. He apparently withdrew due to a breakdown in communication, and was subsequently replaced by public defender John Laishley. (ECF No. 2 at 17, 21).

attorneys' representation. Ward accuses defendant Bartram of (1) refusing to raise the issue of Ward's preliminary hearing before the court. (*Id.* at 11); (2) being employed by the Cabell County Prosecuting Attorney's Office at the time he was appointed to defend Ward. (*Id.* at 14); and (3) failing to object to the involuntary DNA swab test. (*Id.* at 16). Regarding defendant Laishley, Ward asserts that "I believe that every lawyer the judge has appointed me are following the Judge['s] direction and orders. Mr. Laishley has also agreed that it's okay to be unlawfully incarcerated upon jail visits and also a conversation that was held at the jail on Aug. 24, 2012." (*Id.* at 23). Ward seeks money damages from both defendants for his resulting injuries. (*Id.* at 28-31).

A criminal defense attorney, whether retained, court-appointed, or a public defender, does not act under color of state law when performing the traditional functions of a lawyer and, therefore, is not amenable to suit under § 1983. *Polk County v. Dodson*, 454 U.S. 312, 317-24, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) (stating that public defenders representing defendants in criminal proceedings do not act under the color of state law for § 1983 purposes); *Hall v. Quillen*, 631 F.2d 1154, 1155-56, n.2, 3 (4th Cir. 1980) (observing that court-appointed counsel does not act under the color of state law for § 1983 purposes); *Deas v. Potts,* 547 F.2d 800, 800 (4th Cir. 1976) (holding that private counsel retained by a defendant in criminal proceedings does not act under the color of state law for § 1983 purposes). Ward presents no argument that defendants Bartram and Laishley acted outside of their traditional functions as attorneys. Instead, Ward's complaints center on acts clearly within the range of functions regularly performed by an attorney. Given that the two court-appointed attorneys in this case did not act under color of state law, Ward offers no legitimate basis upon which to maintain

this civil action.

Therefore, the undersigned **FINDS** that Shawn Bartram and John Laishley are not state actors subject to suit under liability § 1983 and respectfully **RECOMMENDS** that the United States District Judge **DISMISS** the complaint against them.

### 4. Ted Backus, City of Huntington Police Department

Ward names Detective Ted Backus of the Huntington Police Department as a defendant in the instant action. Ward alleges that defendant Backus signed the original criminal complaint and search warrant against Ward, which included a statement by Backus "that the defendant did forcibly engage in sexual intercourse with the victim at her apartment." (ECF No. 2 at 4-5). Ward asserts that "[t]his complaint was based on a 'ex parte communication'" due to the fact that Ward "didn't state that [he] did anything and no preliminary hearing was held proving [his] guilt to this statement Ted Backus made." (*Id.* at 5). Ward seeks money damages from defendant Backus for his injuries. (*Id.* at 28-31).

Here, Ward apparently contends that his Fourth Amendment rights were violated following his arrest due to the fact that he was not afforded a preliminary hearing to dispute the statements contained in the criminal complaint. (*Id.* at 5). However, as discussed above, Ward was not entitled to a preliminary hearing because he was indicted by a grand jury following his arrest. *See supra* Part II.A. While "[t]he Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest[,] [t]his determination does not involve any adversarial rights, and can be based entirely on hearsay and written testimony." *King v. Jones*, 824 F.2d 324, 326-27 (4th Cir. 1987). Ward does not challenge the finding of

probable cause on any grounds other than the fact that he was not present at the hearing. Ward has therefore failed to allege any set of facts with respect to defendant Backus that, if true, would establish a violation of federal law.

Accordingly, the undersigned **FINDS** no evidence of a constitutional violation by defendant Ted Backus and respectfully **RECOMMENDS** that the United States District Judge **DISMISS** the complaint against him.

### 5. Cabell County Sheriff Department

Ward names the Cabell County Sheriff Department as a defendant in this action, alleging that two of the three officers who administered his court ordered DNA swab test were officers of the Cabell County Sheriff Department. (ECF No. 2 at 16). Ward asserts that the DNA swab test was improperly conducted because he never signed any paperwork consenting to the testing. (*Id.*). Ward requests that the results of the DNA test be expunged and seeks damages for his injuries. (*Id.* at 5, 28-31).

As with the Cabell County Prosecutor's Office, the Cabell County Sheriff Department is a municipal entity not subject to liability premised upon the principle of *respondeat superior*. *See Monell*, 436 U.S. at 681; *Sloane v. Kanawha County Sheriff Dept.*, 342 F.Supp.2d 545, 554 n.8 (S.D.W.V. 2004); *Rankin v. Berkeley County Sheriff's Dept.*, 222 F.Supp.2d 802, 806 (N.D.W.V. 2002). Ward does not allege that the Sheriff Department maintains any policy or custom that is unconstitutional or otherwise violates federal law. Instead, Ward alleges that two Sheriff Department officers participated in obtaining a DNA sample pursuant to court order, but against Ward's will. (ECF No. 2 at 16). Because it appears that Ward seeks to hold the Sheriff Department liable for the actions of its officers, suit against the Cabell County Sheriff Department is

inappropriate.

Furthermore, even if Ward were to substitute the unnamed officers in their individual capacities as the proper defendants, they likely would be protected by quasi-judicial immunity. The doctrine of quasi-judicial immunity applies to non-judicial officers "performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994); *see also Jackson v. Houck*, 181 Fed. Appx. 372, 373 (4th Cir. 2006) ("Absolute immunity applies to all acts of auxiliary court personnel that are basic and integral parts of the judicial function.") (internal quotations omitted). These non-judicial officials are afforded absolute immunity "to prevent them from becoming a 'lightning rod for harassing litigation aimed at judicial orders' which would inevitably result in tension between the courts and those officials duty-bound to enforce the courts' orders and assist in the courts' business." *Reaves v. Rhodes*, No. 4:10-125-TLW-TER, 2011 WL 826358, at *5 (D.S.C. Jan. 26, 2011) (quoting *Valdez v. City and County of Denver*, 878 F.2d 1285, 1289 (10th Cir. 1989)); *see also In re Mills*, 287 Fed. Appx. 273, 279 (4th Cir. 2008). Thus, quasi-judicial immunity has been extended "to protect, among others, clerks of court, law enforcement officers, and others who enforce court orders." *Kendrick v. Cavanaugh*, No. CCB-10-2207, 2011 WL 2837910, at *4 (D. Md. Jul. 14, 2011) (applying quasi-judicial immunity to county sheriff); *McNeil v. Guilford County Sheriff Dept.*, No. 1:09CV999, 2010 WL 377000, at *3 (M.D.N.C. Jan. 25, 2010) (same). In this case, Ward does not base his claim on the conduct of the officers themselves, but upon his belief that the DNA sampling was improper because he "didn't sign any paperwork and nothing was sealed in [his] presence." (ECF No. 2 at 16).

Because the Sheriff Department officers acted pursuant to the Circuit Court's order permitting the Prosecutor to obtain a DNA sample, they are entitled to quasi-judicial immunity from suit.

Therefore, the undersigned **FINDS** no viable claim against the Cabell County Sheriff Department and respectfully **RECOMMENDS** that the United States District Judge **DISMISS** the complaint against it.

### 6. West Virginia Judicial Investigation Commission West Virginia Office of Disciplinary Counsel

Ward names the West Virginia Judicial Investigation Commission (the "JIC") and the West Virginia Office of Disciplinary Counsel (the "ODC") as defendants in the action. Although Ward describes the ethics complaints he filed against Judge Ferguson, Shawn Bartram, and Lauren Plymale, he does not explicitly object to any particular conduct, policy, or decision of either entity.[9] (ECF No. 2 at 9-15, 23). Ward does, however, seek monetary damages from both disciplinary boards for "negligent supervision" and "intentional infliction of emotional distress." (*Id.* at 29, 31). As discussed above, neither negligence nor intentional infliction of emotional distress are cognizable claims under § 1983. *See supra* Part II.D. Furthermore, because both defendants are state agencies, they are entitled to immunity from suit.

_____

[9] In the complaint, Ward states that he filed an ethics complaint against Judge Ferguson with the West Virginia Investigation Commission in March of 2012. (ECF No. 2 at 13). In May of 2012, the Judicial Investigation Commission apparently denied his claim, on grounds that "a dispute regarding how a judicial officer interprets or applies the law in making a decision does not rise to the level of a *[sic]* ethics violation." (ECF No. 2 at 22). Ward also states that he filed ethics complaints with the West Virginia Office of Disciplinary Counsel against his former counsel, Shawn Bartram, and against Assistant Prosecuting Attorney Lauren Plymale. (ECF No. 2 at 9-13, 15, 23). The ethics complaint against Shawn Bartram was apparently rejected and closed March 20, 2012, but later reopened June 30, 2012. (ECF No. 2 at 14-15). The ethics complaint against Lauren Plymale was closed September 20, 2012, but Ward appealed the decision and further review was scheduled for September 26, 2012. (ECF No. 2 at 23).

It is well settled that the Eleventh Amendment bars suits for damages in federal court against a state, its agencies, and its officers acting in their official capacities, absent a waiver of sovereign immunity. *See Lee-Thomas v. Prince George's County Public* Schools, 666 F.3d 244, 248 (4th Cir. 2012); *Cash v. Granville County Board of Educ.*, 242 F.3d 219, 222 (4th Cir. 2001); *Harter v. Vernon*, 101 F.3d 334, 337 (4th Cir. 1996). To determine whether a governmental entity constitutes an "arm of the state" entitled to immunity under the Eleventh Amendment, the Fourth Circuit employs a non-exclusive four factor test, first articulated in *Ram Ditta v. Md. Nat'l Capital Park & Planning Comm'n*, 822 F.2d 456 (4th Cir. 1987). *See Maryland Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255, 261 (4th Cir. 2005); *Harter*, 101 F.3d at 337. Under the *Ram Ditta* framework, the Court will consider:

> (1) whether any judgment against the entity as defendant will be paid by the State or whether any recovery by the entity as plaintiff will inure to the benefit of the State; (2) the degree of autonomy exercised by the entity, including such circumstances as who appoints the entity's directors or officers, who funds the entity, and whether the State retains a veto over the entity's actions; (3) whether the entity is involved with state concerns as distinct from non-state concerns, including local concerns; and (4) how the entity is treated under state law, such as whether the entity's relationship with 'the State [is] sufficiently close to make the entity an arm of the State.'

*South Carolina Dept. of Disabilities and Special Needs v. Hoover Universal, Inc.*, 535 F.3d 300, 303 (4th Cir. 2008) (applying *Ram Ditta* framework to determine a state entity's "citizenship" for diversity purposes). Furthermore, even in the event of a waiver of sovereign immunity, neither the state, its agencies, nor its officers acting in their official capacities are considered "persons" in a § 1983 suit for damages. *See Kelly v. Maryland*, 267 Fed. Appx. 209, 210 (4th Cir. 2008) (quoting *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 65-70, 109 S. Ct. 2304, 105 L.Ed.2d 45 (1989)); *Goodman v.*

*Rockefeller*, 947 F.2d 1186, 1186-87 (4th Cir. 1991). Here, there is no doubt that both the West Virginia Judicial Investigation Commission and the West Virginia Office of Disciplinary Counsel constitute "arms of the state," which are therefore entitled to immunity from suit.

The JIC and the ODC are each part of a comprehensive review scheme created by the West Virginia Supreme Court of Appeals to aid in investigating and regulating claims of attorney and judicial misconduct. Both the JIC and the ODC were established by the West Virginia Supreme Court of Appeals for the purpose of aiding the court in investigating and prosecuting ethical violations claims. Rules 1, 5, West Virginia Rules of Judicial Disciplinary Procedure; Rule 4, West Virginia Rules of Lawyer Disciplinary Procedure.

The ODC consists of separate Lawyer Disciplinary Counsel and Judicial Disciplinary Counsel, both of whom are ultimately selected by the state Supreme Court of Appeals. Rule 5.1, R. Judicial Disciplinary P.; Rule 4.1 R. Lawyer Disciplinary P. The Disciplinary Counsel are each "primarily responsible for the investigation of complaints of ethical violations" by lawyers or judges, respectively. Rule 5, R. Judicial Disciplinary P; Rule 5, R. Lawyer Disciplinary P. The ODC thus reviews, investigates, and prosecutes complaints concerning violations of the Code of Judicial Conduct and the Rules of Professional Conduct. Rule 5.4, R. Judicial Disciplinary P; Rule 4.4 R. Lawyer Disciplinary P.

The JIC is comprised of both judicial officers and members of the public, all of whom are appointed by the state Supreme Court of Appeals. Rules 1.1, 1.3, R. Judicial Disciplinary P. The primary responsibility of the JIC is to "determine whether probable

34

cause exists to formally charge a judge with a violation of the Code of Judicial Conduct or that a judge, because of advancing years and attendant physical and mental incapacity, should not continue to serve." Rules 1, 1.11, R. Judicial Disciplinary P. This determination is made following the ODC's investigation and report on a judicial complaint. Rule 2.6, R. Judicial Disciplinary P.

The expenses and compensation of both the JIC and the ODC are paid by the state Supreme Court of Appeals, the West Virginia State Bar, and the State from funds appropriated to the judiciary. Rules 1.9, 5.5, R. Judicial Disciplinary P. Significantly, the Rules of Judicial Disciplinary Procedure specify that "[a]ll members of the [Judicial Investigation] Commission, ... the Office of Disciplinary Counsel, and their employees, shall be absolutely immune from civil suit in the same manner as members of the judiciary in this State for any conduct in the course of their official duties." Rule 2.5, R. Judicial Disciplinary P. Ultimately, the West Virginia Supreme Court of Appeals is the final arbiter of sanctions imposed for violations of the Rules of Professional Conduct and the Rules of Judicial Conduct. Rules 3.10-.16, R. Lawyer Disciplinary P.; Rules 4.8-.12, R. Judicial Disciplinary P. Given the nature and function of both the JIC and the ODC, it is evident that each constitute an "arm of the state" judiciary, and are therefore immune from suit under the Eleventh Amendment.

This conclusion is consistent with other jurisdictions which have similarly held that state judicial conduct and attorney conduct review boards are state agencies entitled to immunity from suit. *See McKeown v. NY State Comm'n on Judicial Conduct*, 377 Fed. Appx. 121, 122-23 (2d Cir. 2010) (Office of Court Administration of the Unified Court System of New York; Departmental Disciplinary Committee of the New York

Appellate Division, First Department; New York State Grievance Committee, Ninth Judicial District; and New York State Commission on Judicial Conduct); *Madden v. Vermont Supreme Court*, 236 Fed. Appx. 717, 718 (2d Cir. 2007) (Vermont Judicial Conduct and Professional Responsibility Boards); *Dobronski v. Arizona*, 128 Fed. Appx. 608, 609 (9th Cir. 2005) (Arizona Commission on Judicial Conduct); *Kremp v. Dobbs*, 775 F.2d 1319, 1321 (5th Cir. 1985) (Texas State Bar and State Commission on Judicial Conduct); *Democracy Rising PA v. Celluci*, 603 F.Supp.2d 780, 795-96 (M.D. Pa. 2009) (Pennsylvania Judicial Conduct Board and Office of Disciplinary Counsel); *Hunter v. Supreme Court of New Jersey*, 951 F.Supp. 1161, 1177 (D.N.J. 1996) (New Jersey Advisory Committee on Judicial Conduct); *Ysais v. New Mexico Judicial Standard Comm'n*, 616 F.Supp.2d 1176, 1191 (D.N.M. Mar. 31, 2009) (New Mexico Judicial Standard Commission);

Therefore, the undersigned **FINDS** that the West Virginia Judicial Investigation Commission and the West Virginia Office of Disciplinary Counsel are immune from suit under the Eleventh Amendment and respectfully **RECOMMENDS** that the United States District Judge **DISMISS** the complaint against these agencies.

### 7. Clerk of the Court, West Virginia Supreme Court of Appeals

Ward names the Clerk of the Court of the West Virginia Supreme Court of Appeals as a defendant in the instant action, alleging that the Clerk incorrectly construed his petition for a writ of mandamus as a petition for a writ of habeas corpus. (ECF No. 2 at 17). Ward objected to this characterization of his petition, and the docket was subsequently "corrected to reflect that the Petitioner ha[d] filed a petition for writ of mandamus," prior to the date of the state Supreme Court's decision denying his petition.

(*Id.* at 19). However, Ward asserts that this original "altering was intentional and prejudicial to a fraudulent complaint that never existed." (*Id.* at 18). Ward's claim of prejudice is two-fold: First, Ward questions whether the West Virginia Supreme Court of Appeals in fact reviewed the merits of his petition "or was it just not considered at all because of the corrections needing made." (*Id.* at 19). He reasons that "if [his] case was reviewed by competent judges a review would have warranted a rule" in his favor. (*Id.*). Second, Ward also appears to allege that the Clerk's error prevented his criminal trial from commencing on the originally scheduled trial date of August 14, 2012. (*Id.* at 20). Ward seeks damages from the state Supreme Court of Appeals Clerk of the Court for the resulting injuries he sustained. (ECF No. 2 at 28-31).[10]

In the Fourth Circuit, "a court clerk is generally entitled to quasi-judicial immunity." *Ross*, 493 Fed. Appx. 405, 406 (4th Cir. 2012) (citing *Briscoe v. LaHue*, 460 U.S. 325, 334-35, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983)); *Jarvis v. Chasanow*, 448 Fed. Appx. 406, 406 (4th Cir. 2011); *Wiley v. Buncombe County*, 846 F.Supp.2d 480, 485 (W.D.N.C. Mar. 2, 2012) (quasi-judicial immunity applied to clerk who allegedly failed to deliver judge's writ of habeas corpus to the appropriate parties). Such immunity from suit is afforded to clerks due to the "danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts." *Adolphe v. Option One Mortgage*

---

[10] Ward also alleges that on July 31, 2012, the Prosecuting Attorney filed a motion arguing that Ward had "freely and voluntarily waived [his] right to trial waiting on a response from the Supreme Court of Appeals of West Virginia." (ECF No. 2 at 20). Ward does not state the outcome of the Prosecutor's motion, though he does indicate that "the Judge thought that my concern about a *[sic]* answer from the Appeals Court stayed the Circuit Court anyway." (ECF No. 2 at 20). At any rate, the undersigned observes that Ward's criminal proceedings are still ongoing as of the date of this opinion, and that a competency hearing was recently held to determine Ward's competency to stand trial. Clearly, Ward's mandamus proceedings did not effectuate a waiver of his right to a criminal trial.

*Corp.*, No. 3:11-cv-418-RJC, 2012 WL 5873308 (W.D.N.C. Nov. 20, 2012) (quoting *Kincaid v. Vail*, 969 F.2d 594, 601 (7th Cir. 1992)); *see also Martin v. Rush*, No. 5:13–cv–00693–TLW, 2013 WL 2285948, at \*5 (D.S.C. May 23, 2013) (applying quasi-judicial immunity to clerk who allegedly failed to provide him with a hearing transcript despite his request); *Robinson v. McBride*, No.3:13-352-CMC-TER, 2013 WL 2099491, at \*4 (D.S.C. Apr. 12, 2013) (applying quasi-judicial immunity to clerk who allegedly failed to properly process plaintiff's notice of appeal); *Hedgepeth v. Wilkes C.*, No. 3:12-cv-262-RJC, 2012 WL 2092853, at \*6 (W.D.N.C. Jun. 11, 2012) (applying quasi-judicial immunity to clerk who allegedly failed to properly complete the plaintiff's affidavit of indigency); *Wiley v. Buncombe County*, 846 F.Supp.2d 480, 485 (W.D.N.C. 2012) (applying quasi-judicial immunity to clerk who allegedly failed to deliver a writ of habeas corpus to the intended parties). Thus, quasi-judicial immunity would seemingly apply here, where Ward attempts to blame the timing and outcome of the Supreme Court of Appeals' decision on the Clerk of Court's docketing error. However, there is also precedent to deny quasi-judicial immunity to court clerks engaged in mere ministerial conduct that neither involves discretionary decisions nor is taken pursuant to judicial order. *See Johnathan Lee X v. Casey*, No. 90-6677, 1991 WL 10084, at \*1 (4th Cir. Feb. 4, 1991) (denying quasi-judicial immunity to clerk who allegedly failed to file petitioner's appeal); *McCray v. State of Md.*, 456 F.2d 1, 4 (4th Cir. 1972) ("There is no basis for sheltering the clerk from liability under § 1983 for failure to perform a required ministerial act such as properly filing papers."); *Harbeck v. Smith*, 814 F.Supp.2d 608 (E.D. Va. Aug. 30, 2011) (denying quasi-judicial immunity to clerk who failed to notify correctional facility that charges against criminal defendant had been dismissed). The

38

Court need not address the issue of quasi-judicial immunity in this case, as Ward's claims rest upon entirely conclusory allegations of "prejudice" that are belied by his own admissions.

First, there is nothing to suggest that the Supreme Court of Appeals incorrectly regarded Ward's petition as a petition for habeas relief, or that it was denied for any reason other than the merits. Although the Clerk of Court initially observed that "it appears that [Ward] wished to file a habeas corpus" petition, the Clerk promptly corrected the docket entry upon Ward's insistence. (ECF No. 2 at 17-18). This correction occurred well before both the Prosecuting Attorney's response and the Supreme Court of Appeals' order denying Ward's petition. (*Id.* at 19; ECF No. 2-1 at 3-6). In the order denying mandamus relief, the state Supreme Court specifically observed that Ward "presented to the Court his petition praying for a writ of mandamus," and that the Prosecuting Attorney "presented to the Court its written response thereto." (ECF No. 2-1 at 3). Moreover, the Prosecuting Attorney's Response to the petition for a writ of mandamus exclusively addresses the merits of Ward's petition for a writ of mandamus. (*Id.* at 4-6).  There is simply no indication that the Clerk of Court's initial docketing, which it promptly corrected, prevented the Supreme Court from reviewing Ward's petition on the merits.

Second, Ward's assertion that "if the work of the court [clerk] were done correctly it would not have cost me a trial date" is similarly contrived. (ECF No. 2 at 20). Ward provides the following narrative timeline in support of his claim: On March 22, 2012, Ward filed his mandamus petition, which the Clerk of Court initially construed as a petition for habeas corpus relief. (*Id.* at 17). Ward objected to this characterization of his

petition, and on April 20, 2012, the Clerk notified him that the docket had been "corrected to reflect that the Petitioner ha[d] filed a petition for writ of mandamus." (*Id.* at 19). On May 31, 2012, the Circuit Court scheduled his trial to commence on August 14, 2012. (*Id.* at 20). That is, Ward's criminal trial was not scheduled until well after the Clerk of Court corrected the docket entry. Moreover, the Cabell County Prosecuting Attorney did not file a "Response to Petition for Writ of Mandamus" until June 7, 2012. (ECF No. 2-1 at 4-6). And on July 23, 2012, Ward requested expedited relief from the Supreme Court of Appeals due to his impending trial, which the court apparently refused. (ECF No. 2 at 19). On August, 30, 2012, the Supreme Court of Appeals issued its denial of mandamus. (*Id.* at 20; ECF No. 2-1 at 3). Based upon Ward's own assertions, it is evident that the Clerk of Court's initial docketing of his petition did not in any way adversely affect the timing of his criminal trial, which was not scheduled until after the Clerk corrected the docket.

Moreover, even if Ward could show that the Clerk's initial docketing caused a delay in the West Virginia Supreme Court of Appeals' decision, which in turn resulted in a postponement of Ward's trial date, such conduct could at best be characterized as negligent, and therefore does not amount to a cognizable claim under § 1983. *See Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (holding that "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property"); *Pink v. Lester*, 52 F.3d 73, 75 (4th Cir. 1995) ("[N]egligent deprivations of life, liberty, or property are not actionable under 42 U.S.C. § 1983"); *Mitchell v. Aluisi*, 872 F.2d 577, 579 (4th Cir. 1989); *see also Harper v. Currituck County Clerk of Courts*, No. 5:06-CT-3004-D, 2006

WL 4719768, at *2 (E.D.N.C. Nov. 16, 2006) (no liability under § 1983 for clerk of court who miscalculated plaintiff's criminal sentence); *Grate v. White*, No. 4:07-2949-HMH-TER, 2007 WL 2903991, at *3 (D.S.C. Oct. 2, 2007) (no liability under § 1983 for clerk who negligently failed to serve order on the state Attorney General).[11] Rather, the official's conduct must "entail some measure of deliberateness" in effectuating a constitutional deprivation. *Pink*, 52 F.3d at 75; *see also Rutherford v. City of Newport News, Va.*, 919 F.Supp. 885, 890 (E.D. Va. 1996).

Accordingly, the undersigned **FINDS** no factual basis to sustain a claim against the West Virginia Supreme Court of Appeals Clerk of the Court and respectfully **RECOMMENDS** that the United States District Judge **DISMISS** the complaint against the Clerk of Court.

### 8. Mike Clark, Administrator, Western Regional Jail

In order to state a claim under § 1983, Ward must demonstrate that a person acting under color of state law deprived him of a right guaranteed by the Constitution or federal laws. *Rendall-Baker v. Kohn,* 457 U.S. 830, 838, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982). State officers acting in their official capacities are not "persons" subject to money damages under § 1983. *See Kelly v. Maryland*, 267 Fed. Appx. 209, 210 (4th Cir. 2008) (quoting *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 65-70, 109 S. Ct. 2304, 105 L.Ed.2d 45 (1989)); *Goodman v. Rockefeller*, 947 F.2d 1186, 1186-87 (4th Cir. 1991), They are likewise entitled, as arms of the State, to sovereign immunity against such claims. *Will v. Michigan Dep't of State Police,* 491 U.S. at 70. As the Supreme

---

[11] It is not at all clear that the Clerk of Court was in fact negligent in designating Ward's petition as a petition for habeas relief, in light of the nature of the arguments contained in his petition, which apparently included a claim that he was entitled to release from pretrial confinement following the merger order that bound his criminal case over to the Circuit Court. (ECF No. 2-1 at 5).

Court explained in *Will*, "a suit brought against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different than a suit against the State itself." *Id.* at 71. "[W]hen the action is in essence one for the recovery of money from the State, the State is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Ford Motor Co. v. Department of Treasury of Ind.*, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. (1945). Thus, if Ward is suing Administrator Mike Clark in his official capacity, the named defendant is immune from suit pursuant to the Eleventh Amendment to the United States Constitution.

On the other hand, if Ward is suing Clark in his personal capacity, Ward must allege specific conduct or action taken by Clark that violated Ward's civil or constitutional rights, because, as previously stated, the doctrine of *respondeat superior* is not applicable to § 1983 claims. *Monell*, 436 U.S. at 691-94; *Miller v. Pulaski County Sheriff's Dept.*, No. 93-7306, 1994 WL 378079, at *1 (4th Cir. Jul. 20, 1994). Although supervisory liability may attach under certain circumstances, it "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" [12] *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2011) (internal quotations

_____

[12] To establish supervisory liability under § 1983, Ward must demonstrate "(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices [ ]; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Baynard*, 268 F.3d at 235 (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

omitted). In his complaint, Ward alleges that correctional officers Mannon, Guy, and Stowers, among others, made false allegations against him, restrained him in wrist and leg irons, denied him phone and shower privileges, tampered with his mail, and placed him in lock down status during the course of his pretrial confinement. (ECF No. 2 at 24). Ward does not allege, however, that these actions were taken pursuant to Mike Clark's orders or that Mike Clark was even aware of the alleged conduct. Accordingly, Ward has failed to state a cognizable claim for relief against defendant Mike Clark.

Therefore, the undersigned **FINDS** no factual allegations that implicate Defendant Mike Clark and respectfully **RECOMMENDS** that the United States District Judge **DISMISS** the complaint against him.

## IV.    <u>Proposal and Recommendations</u>

For the reasons stated, the undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the Plaintiff's Complaint (ECF No. 2) be **DISMISSED**, with prejudice, as to all of Ward's claims and corresponding defendants.

 Plaintiff is notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of

such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiff, the Defendants, and any counsel of record.

**FILED:**  September 12, 2013.

Cheryl A. Eifert
United States Magistrate Judge

44